UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Naheed Syed, | ) | C/A: 2:14-2576-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | (Partial Summary Dismissal) |
| | ) | |
| South Carolina Vocational Rehabilitation Department; Team 1 Staffing; Office Team; Accountemps; Adecco; Apple One; Alternative Staffing, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff, proceeding pro se, originally filed a complaint which consisted of several different lists of defendants and several repetitive complaints setting forth (in some cases) different claims. She was advised that her pleadings were not in compliance with Rule 8(a), Fed. R. Civ. P., and was directed to submit a new complaint form listing one set of defendants, setting forth her claim(s) against those defendants in a manner that could be understood by the reader, setting forth a jurisdictional basis (i.e., Title VII, § 1981, etc.) for the claim(s) asserted, and setting forth her requested relief. ECF No. 7 at 2.

Plaintiff then filed a new complaint (docketed as the amended complaint in this action) in which she alleges that the Defendants violated her rights under 42 U.S.C. § 1981 (§ 1981); Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e et seq.; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.; the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 701, et seq; and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. Amended Complaint, ECF No. 10 at 1, 9-10. She requests



compensatory damages, lost wages and benefits, punitive damages, a long-term contract for a computer programmer's position, prejudgment interest on all claims, back pay, and front pay with interest, and benefits. Id. at 10, 28.

## Standard of Review

This action is before the Court for pre-service review. See 28 U.S.C. § 1915(e)(2)(B); In re Prison Litigation Reform Act, 105 F.3d 1131, 1134 (6th Cir.1997) [pleadings by non-prisoners should also be screened]. Under established local procedure in this judicial district, a careful review has been made of the pro se complaint herein (as amended) pursuant to the procedural provisions of § 1915, and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke v. Williams, 490 U.S. 319 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Corr., 64 F.3d 951 (4th Cir.1995) (en banc); and Todd v. Baskerville, 712 F.2d 70 (4th Cir.1983). Section 1915 permits an indigent litigant to commence an action in federal court without paying the administrative costs of proceeding with the lawsuit. However, to protect against possible abuses of this privilege, the statute allows a district court to dismiss a case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. at 31. Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed sua sponte. Neitzke v. Williams, 490 U.S. 319. Further, while this Court is also required to liberally construe pro se documents, holding them to a less stringent standard than those drafted by attorneys, Erickson v. Pardus, 551 U.S. 89, 94



(2007)(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal court. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir.1990).

### Facts/Background

A South Carolina Vocational Rehabilitation Department (SCVRD) brochure indicates that the Defendant state agency provides vocational counseling and guidance services to persons with physical or mental impairments that hinders them from competitive employment. ECF No. 10-1 at 118. Defendants Team 1 Staffing, Office Team, Accountemps, Adecco, Apple One, and Alternative Staffing are all employment agencies. ECF No. 10 at 18, 19, 21, 22, 23, 24. According to the allegations of the Complaint, Plaintiff is an Indian born (now a United States citizen), Muslim female. She is more than forty years old, alleges that she is mentally disabled, and receives Social Security disability benefits. ECF No. 10 at 11, 10-1 at 23.[1] She received an Associate Degree from Truman College in 1982, a Bachelor's Degree in Computer Information Systems from DeVry Institute of Technology in 1986, a two-year certificate from a school in Hyderabad, India in 1996, and a two-year certificate in computer programming from Glendale Community College in 2003. ECF No. 10 at 12.

Plaintiff alleges that in 2007 and 2008 she met with Hunsinger (a white female) at SCVRD in Greenville, South Carolina. Hunsinger reviewed Plaintiff's resume and cover letter, and told Plaintiff she would get Plaintiff a job as computer operator in two weeks. However, when

---

[1]Although Plaintiff does not include information concerning her age in her amended complaint, she submitted additional documentation with her amended complaint which indicates her age. See, e.g., ECF No. 10-1 at 31.

3



Plaintiff called Hunsinger back, SCVRD counselor Pattie Label stated that Hunsinger had been transferred to another department and Hunsinger should not have said that she (Hunsinger) was going to give Plaintiff a job. Plaintiff had appointments and interviews with Label and other counselors, but none of them helped Plaintiff get a job. ECF No. 1 at 11, 14-15.

Plaintiff alleges that in 2012 and 2013 she had various dealings with the SCVRD office in North Charleston, South Carolina. SCVRD employee Shannon Reed (white female) met with Plaintiff and Reed asked Plaintiff to "redo" her resume and cover letter. Plaintiff revised her resume and cover letter and called Reed, but Reed kept giving Plaintiff new appointment dates.[2] Plaintiff was transferred to SCVRD counselor Lauren McGuire (white female) who kept giving Plaintiff new appointment dates with no results. McGuire and Reed would not return Plaintiff's phone calls, and Reed said that SCVRD did not provide jobs. Reed asked Plaintiff if she had a diabetic condition, but when Plaintiff asked Reed how that would affect her job search, Reed had no answer to Plaintiff's question. McGuire allegedly asked if Plaintiff had experienced cardiac arrest. SRVRD employee "Tracey" (white female) told Plaintiff that they did not help people get jobs, but that Plaintiff could use their computers. ECF No. 10 at 11, 15-17. Plaintiff also filed an application for a counseling position at SCVRD, but no one ever called her and she was never able to discuss the job with SCVRD. Id. at 17.

Plaintiff alleges she met with "Williams," a white female at Defendant Team 1 Staffing, in July 2013. Plaintiff expressed interest in a receptionist position at Team 1 Staffing, and Williams said she would call Plaintiff in September 2013. On September 3, 2013, Plaintiff called

---

[2]It is unclear the purpose or the content of these "appointments," and it is unclear whether Plaintiff actually had these appointment(s) with SCVRD employees or they were just rescheduled.



Team 1 Staffing and asked to speak to Williams about the receptionist position, but the woman who answered the phone (named "Pauly") told Plaintiff that she [Pauly] took the receptionist job. Plaintiff asserts that Williams hired Pauly before the month of September. ECF No. 10 at 11, 18-19.

Plaintiff alleges she emailed her resume and cover letter to Saskia K. Munn (white female) at Defendant Office Team on June 28, 2013, and interviewed for an administrative assistant position (job number 03270-108687) in July 2013. Plaintiff asserts that "Office Team offers office jobs which include executive positions like the job Plaintiff was looking for, a Computer Programmer's Job." Plaintiff claims that an administrative assistant job was available, but Munn stated that they had already hired somebody for the job. Munn asked Plaintiff to talk to Arthur E. Halder at Accountemps, which was located in the same location as Office Team. Plaintiff claims that Munn asked Plaintiff to call back in two weeks, but that when she called back she was told that she had to leave a message for "Emily." Plaintiff called back a week later and was told to leave a message for "Kara." Plaintiff called back the next week and left a message for Munn. None of these employees of Office Team answered or returned Plaintiff's phone calls. ECF No. 10 at 11, 19-21.

Plaintiff alleges that on July 26, 2013, she had an interview with Mr. Halder (African-American male) at Defendant Accountemps. Plaintiff asserts that Accountemps offers jobs to applicants in accounting, that she has experience in accounting, and she gave Halder her resume. Halder asked Plaintiff if she could "do [a] WEB designing job?" Plaintiff answered, "[y]es I could. I would have to study a little bit." Halder asked Plaintiff to redo her resume and cover letter, which Plaintiff did, but when she tried to email it to Halder, his email address "did not work." Plaintiff asked Munn to forward Plaintiff's resume and cover letter to Halder. Plaintiff attempted to call Halder and was told he no longer worked for Accountemps. ECF No. 10 at 11, 21-22.

5



Plaintiff alleges she gave her resume to Philpot (white male) at Adecco on February 1, 2013. Philpot said he might have something and would call Plaintiff. However, Plaintiff never received any phone call and her calls to Philpot went unanswered. Plaintiff went to the Adecco office after two months and Philpot said he did not have a job for Plaintiff and asked Plaintiff to call him, but Philpot never called her back and never answered her phone calls. ECF No. 10 at 11, 22-23.

Plaintiff alleges she called Kemp (white female) at Apple One at an unspecified time in 2013. Plaintiff asserts that Apple One offered jobs in computer programming as well as administrative/office jobs. Kemp said she did not have anything for Plaintiff and asked Plaintiff to call every two weeks. Plaintiff mailed her resume and cover letter to Kemp, but never got any appointment times with Kemp, Kemp never gave Plaintiff feedback on her resume and cover letter, and Kemp did not respond to Plaintiff's phone calls. ECF No. 10 at 11, 23-24.

Plaintiff alleges she also had contact with consultants at Alternative Staffing in August and September 2013. Plaintiff asserts that Alternative Staffing offers computer programming, accounting, administrative, and "office" jobs. Mike (white male) allegedly told Plaintiff that an accounts receivable/accounts payable job was open. When Plaintiff called to talk to Mike, Sarah (African-American female) asked Plaintiff to come to the office and Plaintiff did so, but the computer was "down" at Alternative Staffing. Plaintiff returned the next day, and after waiting for an hour and a half (because the computer was still not working), Sarah told Plaintiff that "[h]e[3] has canceled the job. He has hired somebody from within the company after looking at your resume." Mike asked Plaintiff to take a typing test, told her she did "OK" on the test, and instructed

---

[3] It is unclear whether "he" is Mike or someone at the potential employer's office.



her to call the following week. Plaintiff continued to call, but Defendants never returned her phone calls. ECF No. 10 at 11, 24-26.

## Discussion

Plaintiff alleges she was subjected to "Job Discrimination and Discrimination" based on her race, sex, age, color, religion, national origin, disability, and "genetic information." ECF No. 10 at 31. Plaintiff lists four causes of action: wrongful denial of employment, retaliation, "discrimination in all," and "individual defendants."[4]  Id.  However, a review of these causes of actions reveals that, in actuality, Plaintiff has only alleged two types of claims: failure to hire (or refer) and retaliation. Plaintiff asserts that she received right to sue notices from the Equal Employment Opportunity Commission (EEOC) as to all Defendants and timely filed this action within ninety days of receipt of the notices. See ECF No. 10 at 10, 10-1 at 2-29.

---

[4] Although citing to "individual defendants", Plaintiff has not named any individuals as defendants in her amended complaint. In any event, individuals are generally not liable under Title VII. See Lissau v. Southern Food Serv., Inc., 159 F.3d 177 (4th Cir. 1998)[holding that supervisors are not liable in their individual capacities for Title VII violations]. The Fourth Circuit has also stated that the language of the ADEA limits liability to "employers" and therefore prohibits individual liability against employees as agents of the employer; Birbeck v. Marvel Lighting Corp., 30 F.3d 507, 510 (4th Cir. 1994); although individual liability may arise in the limited situation where the individual discriminates while performing a non-delegable duty. Id. at 510, n. 1. Additionally, the Fourth Circuit, in Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999), held that an ADA retaliation claim could not go forward against individual defendants "[b]ecause Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions." Id. at 472; see also Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007) [No individual liability under the ADA]."Individual liability is [also] not contemplated under" the Rehabilitation Act. See Young v. Barthlow, CIV.A. RWT–07–662, 2007 WL 5253983, at *2 (D.Md. Nov. 7, 2007) aff'd, 267 F. App'x 250 (4th Cir. 2008).



**Failure to Hire/Failure to Refer**

Plaintiff appears to allege that Defendant SCVRD failed to hire her for a counselor position, Team 1 Staffing failed to hire her for a receptionist position, Office Team failed to hire her for an administrative assistant position, Accountemps failed to hire her for a web designing job, and Alternative Staffing failed to hire her for an accounts receivable/accounts payable position. She also may be attempting to assert that the Defendants failed to refer her for unidentified jobs in other companies.[5]

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and although the court must liberally construe a pro se complaint, the Unites States Supreme Court has made clear that a plaintiff must do more than make conclusory statements to state a claim. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 570. While "a plaintiff is not required to plead facts that constitute a prima facie case;" Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–15 (2002)); a complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Coleman, 626 F.3d at 190 (quoting Twombly, 550 U.S. at 555). A complaint need not contain detailed factual allegations, but it must contain "more than labels and conclusions,

---

[5] It shall be an unlawful employment practice for an employment agency to **fail or refuse to refer for employment**, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin. 42 U.S.C.A. § 2000e-2(b)(emphasis added).

8



and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Further, the Fourth Circuit has recognized that Swierkiewicz "'left untouched the burden of a plaintiff to allege facts sufficient to state all the elements of her claim;'" Miller v. Carolinas Healthcare Sys., 561 F. App'x. 239, 241 (4th Cir. 2014)(quoting Jordan v. Alt. Res. Corp., 458 F.3d 332, 346 (4th Cir.2006)); and even pro se plaintiffs must set forth enough factual allegations sufficient to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed" for failing to state a claim upon which relief can be granted. Twombly, 550 U.S. at 569–70; see also Iqbal, 556 U.S. at 679 ["A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."].

Here, reviewing the allegations of the Complaint in the light most favorable to her and giving Plaintiff every benefit of the doubt as a pro se litigant, the undersigned concludes that Plaintiff has set forth sufficient allegations to state a claim for failure to hire/failure to refer against SCVRD pursuant to the ADA and/or Rehabilitation Act.  However, she has failed to state a claim for failure to hire/failure to refer as to Defendants Team 1 Staffing, Office Team, Accountemps, Adecco, Apple One, and Alternative Staffing.  Plaintiff also fails to state a claim against SCVRD pursuant to § 1981, Title VII, or the ADEA.

In order to state a claim for failure to hire/failure to refer pursuant to Title VII, § 1981,[6] the ADA,[7] or the ADEA, an employee must show that she is (1) a member of the protected

---

[6] The standards applicable to lawsuits under § 1981 are basically the same as the standards applicable to lawsuits under Title VII, with the same caselaw being used to evaluate a claim under either statute. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002) ["In analyzing a claim ... under section 1981, we apply the same standards as in a similar Title VII
(continued...)

9



group (or had a disability under the ADA); (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.[8]  See Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006)[ADEA]; Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998)[Title VII]; Allen v. Johnson, C/A No. DKC 09–1503, 2010 WL 2431022, at *3 (D.Md. June 10, 2010) [ADA](citing Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).[9]

---

[6](...continued) claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997). Therefore, the analysis set forth herein with respect to Plaintiff's claims under Title VII also applies to any claims Plaintiff has asserted under § 1981.

[7]Although Plaintiff states at the beginning of her amended complaint that she seeks damages pursuant to the Rehabilitation Act, she does not list the Rehabilitation Act in the causes of action section.  In any event, "[w]hether suit is filed against a federally-funded entity under the Rehabilitation Act or against a private employer under the ADA, the substantive standards for determining liability are the same." Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995). Thus, the analysis concerning Plaintiff's claims under the ADA is equally applicable to any Rehabilitation Act claims.

[8]The fourth prong may also be proved by showing that the position remained open or was filled by a similarly qualified applicant who was substantially younger than Plaintiff (ADEA), or after her rejection the position remained open and the employer continued to seek applicants from persons of her qualifications. See, e.g., Laber v. Harvey, 438 F.3d at 430; EEOC v. Sears Roebuck & Co., 243 F.3d 846, 851 (4th Cir. 2001).

[9]To state a claim under § 2000e-2(b), a plaintiff must allege that the employment agency refused or failed to refer the plaintiff to an available position with an employer on the basis of a discriminatory animus regarding the protected factor.  See EEOC v. Kelly Servs., Inc., 598 F.3d 1022, 1030 (8th Cir. 2010).  Although there are few cases dealing with discrimination by employment agencies, the traditional burden-shifting framework has been applied in much the same way as against an employer. See id. [applying test to a religious discrimination claim under Title VII]; Hudson v. Kelly Servs., Inc., No. 4:05CV1096, 2006 WL 2320684 (E.D.Mo. Aug. 8, 2006) [racial discrimination]. However, the scope of prohibited practices is limited; courts have held that section 2000e–2(b) does "not encompass the practices prohibited to 'employers.'" Kellam v. Snelling Personnel Servs., 866 F.Supp. 812, 817 (D.Del. 1994).  Instead, they can be held liable only for discrimination in referrals, failure to refer, or other discriminatory practices relating to referral. Id.



Plaintiff only conclusorily alleges in her amended complaint that she was not hired or referred based on a number of prohibited factors (race, color, national origin, sex, religion, disability, age, and genetic information), and has asserted no facts to establish a plausible basis for believing that Defendants Team 1 Staffing, Office Team, Accountemps, Adecco, Apple One, or Alternative Staffing failed to hire or failed to refer her based on these protected factors. Rather, she merely alleges that she is a member of a number of various protected groups[10] and was not hired or referred. As to Defendant SCVRD, she has again failed to set forth facts sufficient to establish a plausible basis for believing that SCVRD failed to hire or refer her for a job based on these prohibited factors, except (as noted below) with respect to disability. See, e.g., Ahmed v. Charleston County Sch. Dist., No. 2:11-cv-239-RMG, 2012 WL 666857 (D.S.C. Feb. 29, 2012)[dismissing complaint without prejudice because the plaintiff, who appeared to assert a claim pursuant to Title VII, failed to timely file an EEOC charge and failed to allege all the elements of a Title VII claim]; Briggs v. Charlottesville Public Schools, No. 3:12-cv-00004, 2012 WL 300418 (W.D.Va. Feb. 1, 2012)[summarily dismissing the plaintiff's Title VII and ADA claims for failure to state a claim where the plaintiff submitted a mostly nonsensical and unintelligible complaint in which he asserted that he was a member of the protected classes and was terminated, but failed to offer any basis to conclude that he was terminated for discrimination].

---

[10]Claims based on a person's genetics are a relatively new category of claims, but have been codified in Title VII. Under the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff, et seq., "genetic information" includes (1) an individual's genetic tests; (2) the genetic tests of the individual's family members; and (3) the manifestation of a disease or disorder of the individual's family members. See 42 U.S.C. § 2000ff (4)(A). However, Plaintiff has failed to set forth any facts to show that she is a member of a protected class with respect to her genetic makeup.



11

As for her claims against the SCVRD under the ADA and/or Rehabilitation Act, Plaintiff appears to have stated a claim for discrimination based on disability because she asserts she is disabled, she applied for a job as a counselor at SCVRD for which she was never contacted and not hired, she appears to claim she was qualified for the job, and that employees of SCVRD asked her specific questions concerning certain physical impairments (although Plaintiff asserts she is disabled based on a mental disability, it is plausible that she is asserting that Defendant SCVRD perceived her as physically disabled), and one employee failed to respond when Plaintiff asked how this affected her ability to work.

**Retaliation**

Although Plaintiff lists "retaliation" as her second cause of action, she fails to state a claim for retaliation under Title VII, § 1981, the ADEA, the Rehabilitation Act or the ADA. She claims retaliation because the Defendants asked her to "keep calling the Defendants every two weeks from the very first day when the Plaintiff started to visit their offices," but she was never informed by the Defendants that they did not have the type of work she sought. ECF No. 10 at 30-31. However, in order to set forth a retaliation claim, Plaintiff must alleged facts to show that (1) she engaged in protected activity; (2) the employer took adverse action against her; and (3) a causal connection exists between the protected activity and the adverse action. Laber v. Harvey, 438 F.3d at 432; Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002); Munday v. Waste Management of North America, 126 F.3d 239, 242 (4th Cir. 1997). Plaintiff's allegation that the Defendants required her to keep telephoning them while failing to tell her that they did not have the type of work she sought does not set forth a plausible claim for retaliation; Iqbal, 556 U.S. at 679 ["A claim has facial plausibility when the plaintiff pleads factual content that allows the court to



draw the reasonable inference that the defendant is liable for the misconduct alleged."]; as the complaint fails to establish a plausible basis for believing that Plaintiff engaged in any protected activity or that the alleged adverse actions (even if they can be considered adverse actions)[11] were causally connected to any protected activity.

"[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." EEOC v. Navy Federal Credit Union, 424 F.3d 397, 406 (4th Cir. 2005), cert. denied, 547 U.S. 1041 (2006); see also Laughlin v. Metropolitan Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) ["An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace."]. Protected oppositional activity "may include 'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complain[ts] ... about suspected violations'" of Title VII. EEOC v. Navy Federal Credit Union, 424 F.3d at 406 (citations omitted). The Fourth Circuit has also held that the filing of an EEOC complaint generally constitutes protected activity. See, e.g., King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003), cert. denied, 540 U.S. 1073 (2003); see also Carter v. Ball, 33 F.3d 450, 460 (4th Cir.1994). Here, Plaintiff has simply not set forth any factual allegations to show that she

---

[11]The Supreme Court has clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts, stating that "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006). Even so, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quotation marks and citations omitted).



engaged in any protected activity as discussed hereinabove prior to the Defendants' alleged retaliation, or that the alleged "adverse actions" of which she complains were causally connected to any such protected activity.

### **Recommendation**

For the foregoing reasons, it is recommended that Team 1 Staffing, Office Team, Accountemps, Adecco, Apple One, and Alternative Staffing be **dismissed**, without prejudice, as party Defendants, without issuance and service of process. It is also recommended that Plaintiff's claims against the Defendant South Carolina Vocational Rehabilitation Department for retaliation and her claims for failure to hire and for failure to refer against this Defendant pursuant to Title VII, § 1981, and the ADEA be **dismissed**.

Plaintiff's remaining claims for failure to hire and/or failure to refer pursuant to the ADA and/or Rehabilitation Act against the Defendant South Carolina Vocational Rehabilitation Department are sufficiently pled to survive summary dismissal. In a separate serve order being entered this date, the Clerk is being authorized to issue a summons for this Defendant.

Plaintiff's attention is directed to the important notice on the next page.

Bristow Marchant
United States Magistrate Judge

March 17, 2015
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005)(quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

